UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| United States of America, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
| v. | )    No.: 3:14-CV-47-PLR-HBG |
| | ) |
| Any and All Radio Station Equipment, | ) |
| *et al.*, | ) |
| | ) |
|     *Defendants*. | ) |

## Memorandum Opinion

Arthur Lee Young operated an unlicensed radio station transmitting at 87.9MHz from his property in Cosby, Tennessee. On April 14, 2011, after hearing reports of this activity, an agent from the Federal Communications Commission's Enforcement Bureau travelled to Cosby and located the 50 foot tall antenna that Mr. Young was using for his radio station. The FCC agent took a field-strength measurement of the signal and determined that the station's field-strength was 177,929 times the field-strength permissible without a license. The agent spoke with Mr. Young who admitted to operating the station and allowed the agent to inspect his equipment.

A few days later, the FCC sent Mr. Young a warning about operating an unlicensed radio station. It advised Mr. Young that operating an unlicensed radio station violates federal law, and it outlined potential penalties for continued operation of an unlicensed radio station, including seizure of the equipment, fines, and imprisonment.

About ten months later, in early 2012, the FCC agent learned about another unlicensed radio transmission in Cosby, Tennessee. The agent drove to the area and located the source of the signal. It was coming from the same location as the signal Mr. Young transmitted in April of

2011. The agent took a field-strength measurement of the station's signal and determined that it was 15,017 times the permissible level. The agent asked Mr. Young for permission to inspect his radio station, but Mr. Young refused.

A month later, the FCC sent a Notice of Apparent Liability for Forfeiture to Mr. Young for the operation of the unlicensed station and for his refusal to allow inspection. When Mr. Young did not respond to the notice, the FCC's Enforcement Bureau issued a Forfeiture Order in the amount of $22,000 for Mr. Young's willful violation of 47 U.S.C. § 301 and 303(n) (forbidding unlicensed radio stations and requiring radio station operators to allow FCC inspection of their equipment). In December 2013, the FCC agent drove to Cosby, and determined that Mr. Young was yet again transmitting a radio signal without a license.

In February 2014, the United States filed a complaint seeking *in rem* forfeiture of Mr. Young's radio equipment and monetary forfeiture from Mr. Young in the amount of $22,000. Mr. Young, proceeding *pro se*, has filed numerous documents in response. The bulk of his filings, labelled as "affidavits," are unintelligible or are simply irrelevant. For example, two of the affidavits challenge the territorial jurisdiction of this Court and the FCC in Cosby, Tennessee pursuant to Article 1, Section 8, Clause 17 of the United States Constitution.[1] Other affidavits are written by listeners of Mr. Young's radio station, stating that they listen to Mr. Young's radio station and will miss it. Perhaps most puzzling of all, in one affidavit Mr. Young appears to deny his own existence as well as the existence of the United States, the State of Tennessee, and numerous other government entities.

---

[1] This clause, relating to Congress's authority to govern the District of Columbia, has absolutely nothing to do with the case at hand.

Eventually, the government filed a motion for judgment on the pleadings. [R. 18]. In response, Mr. Young has filed various objections. [R. 20, 22]. The Court will treat the objections collectively as a response in opposition.

I.  *Standard of Review*

The government's *in rem* claim, asserted against Mr. Young's radio equipment, is governed by Rule G of the Supplemental Rules for Admiralty Claims and Asset Forfeiture Actions. Rule G incorporates Federal Rule of Civil Procedure 12(c)'s provision for judgment on the pleadings. *See United States v. 2006 Dodge Charger SRT-8*, No. 3:09-cv-518, 2011 WL 2601028, at *2 (E.D. Tenn. June 30, 2011). Motions for judgment on the pleadings under Rule 12(c) are analyzed the same as motions to dismiss under Rule 12(b)(6). *Id.*; *see also Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For the purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker*, 539 F.3d at 549 (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A motion for judgment on the pleadings is appropriately granted when "no material issue of fact exists" and the moving party is entitled to judgment as a matter of law. *Id.*

Mr. Young is proceeding *pro se*. It is well settled that pleadings drafted by a *pro se* litigant are to be held to less stringent standards than formal pleadings drafted by attorneys. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The "lenient treatment" afforded to *pro se* litigants is not, however, without limit. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). *Pro se* litigants cannot proceed on incomprehensible pleadings. *See, Janita Theresa Corp. v. United States Attorney*, 113 F.3d 1235

3

(6th Cir. 1997) (affirming district court's dismissal of complaint where the plaintiff's pleadings were "far too muddled to serve as a basis for a proper suit"); *Reeves v. Ratliff,* 2005 WL 1719970, at *2 (E.D. Ky. July 21, 2005) ("Judges are not required to construct a [*pro se*] party's legal arguments for him.").

II.  Discussion

Title 47 U.S.C. § 301 prohibits the unlicensed operation of any apparatus for the transmission of energy, communications, or signals by radio from one place in the United States to another. There is no dispute that Mr. Young violated § 301. Though Mr. Young denies many things in his various affidavits, he does not deny operating a radio station at 87.9MHz at power levels exceeding what is allowable by law without a license. In fact, many of the third party affidavits submitted by Mr. Young serve to confirm that Mr. Young was operating a radio station on a continual basis.[2]

Title 47 U.S.C. § 510 provides for the seizure and forfeiture of radio equipment used with a willful intent to violate § 301. A willful violation is one where the violator consciously or deliberately committed the violating act, irrespective of any intent to violate the law. 47 U.S.C. § 312(f)(1). There is no question that Mr. Young consciously and deliberately operated his radio station at 87.9MHz. The willfulness of Mr. Young's actions is confirmed by his pleadings explaining the purpose of his unlicensed radio station and his objection to "the surrounding community being denied the right of receiving vital and important information that was being provided on 87.9MHz." [R. 22, Objections, Page ID 182]. Mr. Young was not accidentally

---

[2] As one example, R. 17, Page ID 154, is an affidavit from Judith Sheller stating that she has depended on 87.9MHz for health shows, local news, weather, talk shows, and public service announcements. She states that 87.9MHz stopped on February 19, 2014—the date the United States Marshals seized Mr. Young's radio equipment. [R. 6, Page ID 60-65].

4

transmitting at 87.9MHz. His actions were willful. Accordingly, the United States is entitled to judgment on the pleadings in its *in rem* forfeiture claim under 47 U.S.C. § 510.

Title 47 U.S.C. § 503(b) provides for monetary penalties when an individual willfully or repeatedly fails to comply with the provisions of Chapter 5, Title 47 of the United States Code, including 47 U.S.C. §§ 301 and 303(n). Mr. Young has repeatedly and willfully violated 47 U.S.C. § 301 by operating an unlicensed radio station. He also violated 47 U.S.C. § 303(n) by refusing to allow the FCC to inspect the radio station at his residence. The base forfeiture amount for operating a radio station without a license is $10,000. *The Commission's Forfeiture Policy Statement*, 12 FCC Rcd 17087 (1997); 47 C.F.R. § 1.80. The base forfeiture amount for refusing to allow inspection is $7,000. *Id*. The forfeiture amount can be adjusted upward based on several criteria, including the egregiousness of the misconduct, ability to pay, whether the violation was intentional, and whether the violation was repeated or continuous. *Id.* The FCC's notice of apparent liability, which must be issued pursuant to 47 U.S.C. § 503(b)(4), assessed a total of $22,000 in forfeiture penalties—$10,000 for unlicensed broadcasting, $7,000 for refusing inspection, and a $5,000 upward adjustment. The upward adjustment was based on Mr. Young's repeated operation of an unlicensed station and his refusal to allow inspection even after he was repeatedly warned that his actions were unlawful. Because there is no dispute that Mr. Young willfully and repeatedly failed to comply with the law, the United States is entitled to judgment on the pleadings on its monetary forfeiture claim.

III.  *Conclusion*

For the foregoing reasons, the government's motion for judgment on the pleadings [R. 18] is **GRANTED**.

5

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**